UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KARL FAHEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 4:05CV01453 FRB |
| ) | |
| v. ) | |
| ) | |
| ) | |
| U.S. BANK NATIONAL ASSOCIATION ) | |
| and EXPERIAN INFORMATION ) | |
| SOLUTIONS, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of Defendant U.S. Bank National Association ("U.S. Bank") to compel arbitration. (Docket No. 8/filed October 14, 2005.) All matters are currently pending before the undersigned United States Magistrate Judge with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Karl Fahey ("plaintiff") originally brought this cause of action in the Circuit Court for the City of St. Louis on August 5, 2005, against defendants U.S. Bank and Experian Information Solutions, Inc. ("Experian"), alleging negligence and violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 <u>et seq.</u> Specifically, plaintiff alleged that Experian, based upon information provided by U.S. Bank, reported plaintiff as having two

- 1 -

delinquent accounts, even though he was never an account holder with U.S. Bank. U.S. Bank thereafter removed the case to this Court on federal question grounds, and filed the instant Motion to Compel Arbitration. Therein, U.S. Bank requests that this Court enter an Order compelling plaintiff to arbitrate his claim against U.S. Bank and to dismiss plaintiff's claims in this Court, arguing that plaintiff's claims are subject to arbitration by virtue of terms and conditions in Cardholder Agreements to which plaintiff was a party. In support, U.S. Bank submitted the affidavit of Stephanie Roland, a Retail Payment Solutions Recovery Specialist for U.S. Bank, in which she stated that plaintiff and his wife, Mary Fahey (from whom plaintiff asserts he was divorced in 1995), jointly opened two credit accounts in December, 1990.[1] (Docket Nos. 9-2; 35-2.) In addition, following a hearing on July 26, 2006, U.S. Bank submitted a Supplemental Memorandum (Docket No. 35-1/filed August 15, 2006) with exhibits which included a Supplemental Affidavit of Stephanie Roland (Docket No. 35-2), and copies of credit card billing statements which had been mailed to Mary L. Fahey and Karl D. Fahey, documenting purchases and payments made on both accounts (Docket Nos. 35-4, 35-5, 35-7, and 35-10), and copies of the Cardmember Agreements pertaining to the VISA and MasterCard accounts, addressed to both plaintiff and Mary Fahey, each of which contained valid arbitration provisions. (Docket Nos.

---

[1] The accounts in question were a VISA account ending in number 4602, and a MasterCard account ending in number 2384.

35-8, 35-9, 35-11, 35-12, 35-13, and 35-14).

In response to U.S. Bank's Motion, plaintiff argues that, under principles of contract, he cannot be forced to arbitrate his claims against U.S. Bank because there exists no proof that he was actually an account holder with U.S. Bank. Plaintiff submits that his former wife was the sole obligor on the accounts in question. In support, plaintiff filed an affidavit in which he attested that he never opened any credit account with U.S. Bank or signed any credit card application, contract or other document with U.S. Bank. (Docket No. 12/filed November 15, 2005.) Plaintiff further stated that, after he was divorced in 1995, he telephoned U.S. Bank's predecessor bank, where he believed his former wife had accounts, in an attempt to discover whether his name was listed on any such accounts. Plaintiff stated that the person who answered the telephone declined to talk to him because he was not a card member. Plaintiff further argues that U.S. Bank has failed to meet its burden of proof because it has not provided a copy of an application or any other document bearing his signature. The remainder of plaintiff's arguments are grievances against the practices of banks and credit card companies in general. Plaintiff submits no evidence that the debts in question were assumed by Mary Fahey alone.

The Cardmember Agreement applicable to each account contained identical arbitration provisions, which provided in part as follows:

> By requesting an Account from us and accepting this Agreement, you agree that if a dispute of any kind arises out of this Agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration. The Arbitrator's decision will generally be final and binding. Other rights that you would have if you went to court may also not be available in arbitration. It is important that you read the entire Arbitration Provision carefully before accepting the terms of this Agreement.
> . . .

(Docket Nos. 35-13 and 35-14, paragraph 43.)

The Federal Arbitration Act (FAA) provides that written agreements to resolve disputes through arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the for the revocation of any contract." 9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Memorial Hospital v. Mercury Construction Co., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-944 (1983). In assessing whether a dispute is subject to arbitration, the court is required to determine "whether the parties have entered a valid agreement to arbitrate and, if so, whether the existing dispute falls under the

coverage of the agreement." Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001). The Arbitration Act establishes that, as a matter of federal law, questions regarding arbitrability should be resolved in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." Moses H. Cone Memorial Hospital, 460 U.S. at 24-25; 103 S.Ct. at 941.

It is clear that the arbitration clauses applicable to each of the accounts in question clearly, explicitly and directly provided that a dispute "of any kind" shall be resolved through arbitration, at the choosing of either party. Plaintiff's argument that U.S. Bank must submit an application or other document bearing his signature in order to prove the existence of an agreement is not compelling. The evidence submitted by U.S. Bank shows that the two credit card accounts in question were issued to both plaintiff and his former wife as co-obligors, that the terms, including the arbitration clause, were provided to plaintiff and his former wife. It is further clear that both of the cards were used. The use of the cards amounts to acceptance of the terms of the cardholder agreements. Grasso v. First USA Bank, 713 A.2d 304, 308-09 (Del. Super. 1998) (credit card holder accepted cardholder agreement's terms by using the credit card); Gaynoe v. First Union Direct Bank, N.A., 2001 WL 34000142 (N.C. Super. 2001) (cardholder's use of credit card issued by bank constituted acceptance of the contract

terms); see also Davis v. JP Morgan Chase Bank, 2004 WL 783382 (N.D. Ill 2004) (plaintiffs accepted the modification in the Cardmember Agreement by continuing to use the credit card after notification that the terms had changed).

Furthermore, plaintiff's contention that he was never actually obligated on either account is an issue properly submitted to arbitration. In Prima Paint Corp. v. Flood & Conklin Mfg. Corp., 388 U.S. 395, 87 S.Ct. 1801 (1967), for example, a dispute arose surrounding a contract containing an arbitration clause, but one party alleged that the contract itself was invalid due to fraud in the inducement. The Supreme Court held that the issue of whether there was actually fraud in the inducement of the contract containing the arbitration clause was a question for arbitration, not for the court. Id. at 402-404; 87 S.Ct. at 1805-06. This logic is applicable to the instant case. The Arbitration Act clearly establishes that doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the issue involves the construction of the contract language itself or another defense to arbitrability. See Moses H. Cone Memorial Hospital, 460 U.S. at 24-25; 103 S.Ct. at 941.

Defendant also requests that this Court enter an order dismissing this cause pending the submission of plaintiff's claims to arbitration. Section 3 of the FAA provides that when claims are properly referable to arbitration, upon application of one of the parties, the court shall stay the trial of the action until

arbitration is complete.  9 U.S.C. § 3.  Dismissal is appropriate when <u>all</u> of the issues raised in the complaint are submitted to arbitration in accordance with a valid and enforceable arbitration agreement.  <u>Alford v. Dean Witter Reynolds, Inc.</u>, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis added).

Dismissal is inappropriate in this matter because not all of the issues raised in the complaint are subject to arbitration, as this case involves an additional defendant, Experian Solutions, Inc., who has appeared and answered plaintiff's complaint.  As this Order referring the matter to arbitration does not at this time resolve all of the issues in plaintiff's pending complaint, this matter shall be stayed pending arbitration.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion to Compel Arbitration (Docket No. 8) is granted.

**IT IS FURTHER ORDERED** that defendant's request for dismissal is denied.

**IT IS FURTHER ORDERED** that this cause shall be stayed pending arbitration.

*Frederick R. Buckles*
_____
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of September, 2006.