UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KARL FAHEY,                        )
                                   )
        Plaintiff,                 )
                                   )        No. 4:05CV01453 FRB
                                   )
v.                                 )
                                   )
                                   )
EXPERIAN INFORMATION               )
SOLUTIONS, INC.,                   )
                                   )
        Defendant.                 )

**MEMORANDUM AND ORDER**

        This matter is before the Court on the motion of Experian
Information Solutions, Inc. ("defendant" or "Experian") for summary
judgment.  (Docket No. 66/filed December 21, 2007.)  All matters
are currently pending before the undersigned United States
Magistrate Judge, with consent of the parties, pursuant to 28
U.S.C. § 636(c).

**I.    Procedural Background**

        Karl Fahey ("plaintiff") originally brought this cause of
action in the Circuit Court for the City of St. Louis on August 5,
2005, against defendants U.S. Bank and Experian Information
Solutions, Inc. ("Experian"), alleging violations of the Fair
Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").  Experian
is a credit reporting agency ("CRA") as defined by the FCRA.
Specifically, plaintiff alleged that Experian, based upon

- 1 -

information provided by U.S. Bank, reported plaintiff as having two delinquent credit accounts, even though his former wife was the sole obligor.  Plaintiff alleged he was damaged when he was denied a mortgage loan and other credit, and when his existing interest rates were increased, because his credit report erroneously included two delinquent U.S. Bank accounts.  Plaintiff also alleged damages for emotional distress, and punitive damages.  U.S. Bank removed the case to this Court on federal question grounds.  On September 29, 2006, this Court granted U.S. Bank's motion to compel arbitration, during which plaintiff and U.S. Bank achieved settlement.  Upon the parties' motion, plaintiff's claims against U.S. Bank were dismissed, leaving Experian as the sole defendant.

On June 25, 2007, plaintiff filed his two-count First Amended Complaint against Experian, alleging negligent and willful violations of the FCRA.  In Count I, plaintiff alleges that Experian negligently (1) violated 15 U.S.C. § 1681e(b) inasmuch as it failed to follow reasonable procedures to ensure the maximum possible accuracy of the information disseminated about him; and (2) violated 15 U.S.C. § 1681i inasmuch as it failed to properly investigate his dispute.  In Count II, plaintiff alleges that the aforementioned violations of §§ 1681e(b) and 1681i were willful. Plaintiff alleges that Experian's improper credit reporting damaged his credit standing, caused him to sustain denials of credit and withdrawals of existing credit, inconvenience, expense, and emotional distress.

Experian now moves for summary judgment on each claim in plaintiff's complaint. In support, Experian argues that plaintiff cannot demonstrate that the credit report he challenges was inaccurate; he has no evidence of actual damages or causation; Experian followed reasonable procedures to ensure the accuracy of plaintiff's credit information and in reinvestigating plaintiff's disputes; and that plaintiff has no evidence of willfulness justifying punitive damages. In response, plaintiff contends that genuine issues as to material facts exist, precluding summary judgment. Plaintiff's arguments are well-taken.

## II. Factual Background

Viewed in the light most favorable to plaintiff, the relevant facts are as follows. On or around December 1990, while plaintiff was married to Mary Fahey, the two credit card accounts disputed herein were opened.[1] According to the affidavit of Ms. Stephanie Roland, Assistant Vice-President and Retail Payment Solutions Recovery Specialist for U.S. Bank, the accounts were, at the time of inception, classified as joint accounts, and two separate credit cards were issued on each account, one in Mary Fahey's name, the other in Karl Fahey's name. Ms. Roland further indicated that both accounts were used, and that billing statements addressed to both Mary Fahey and Karl Fahey were mailed to the

---

[1] The record indicates that the accounts were opened with Mercantile Bank and that, via mergers and/or acquisitions, U.S. Bank became the successor in interest.

address at which plaintiff admitted he lived with his wife during their marriage.  Plaintiff and Mary Fahey were divorced in 1995. Plaintiff disputes that he was ever obligated on either account.

Prior to July 28, 2003, plaintiff's credit file with Experian included the two U.S. Bank accounts.  On that date, plaintiff contacted Experian by telephone and initiated a dispute, stating that the accounts belonged solely to his former wife.  In response, Experian sent a Consumer Dispute Verification ("CDV") form for each account to U.S. Bank, explaining the nature of plaintiff's dispute, and requesting verification of the accuracy of the information.  In response, U.S. Bank completed and returned the two CDV forms to Experian, stating that it had verified each account, and that the accounts were delinquent in an amount totaling more than $25,000.00.

It is notable that each CDV form U.S. Bank returned to Experian contained a section listing five "identification items": name, address, previous address, SSN/DOB, and Spouse SSN. (Docket No. 67-2 at 8, 10.)  At the top of this section were instructions for the preparer to "check the 'SAME' box for each identification item appearing on the CDV which is identical to your records. Provide differing information in the shaded area."  <u>Id.</u>  On each form, the only "same" box checked was next to the identification

item "name".[2]  Id.  In the shaded area beside the identification

item "SSN/DOB", the words "unable to identify" were handwritten.

Id.  The forms were signed, dated August 4, 2003, and a telephone

number was provided.  (Docket No. 67-2 at 8, 10.)  Experian

solicited no further information from U.S. Bank, and informed

plaintiff via letter that it had verified the negative information

as accurate.

     In his affidavit, plaintiff denied ever applying for,

signing for, or using a credit account with U.S. Bank.  (Docket

No. 69-3 at 1.)  Plaintiff also denied ever telling any U.S. Bank

representative that he had co-signed or otherwise agreed to be

responsible for any account.  Id.

     Plaintiff further testified that, in or around July of

2005, he attended an auction and was the successful bidder on a

home located at 416 Adrian Avenue in St. Louis.  Plaintiff had half

of the home's sales price in cash and, prior to the auction, had

applied for a loan from Soldi Financial, a mortgage broker, for the

other half.[3]  Plaintiff testified that Soldi told him, prior to the

auction, that he was pre-approved.  The record indicates that Soldi

had submitted plaintiff's loan application to First Magnus, a

---

[2]Next to the identification item for address, the preparer wrote "1703 Bage
Rd. Festus, Mo. 63028".  During the time in question, plaintiff lived in the same
home with his wife, but the name of the street was changed from Haverstick School
Road to Bage Road, apparently due to the inception of 911 service.

[3]The parties do not dispute that Soldi is a mortgage broker which does not
fund loans itself, but instead refers individual loan applications to loan
wholesalers (in this case, First Magnus) for funding.

wholesale lending company.  In her deposition, Ms. Jana Gledhill, the corporate representative for First Magnus, testified that First Magnus had reviewed plaintiff's credit report from Experian, Equifax and Trans Union, and that Experian and Equifax were reporting the two U.S. Bank accounts with the status "profit and loss" with balances totaling more than $25,000.00.  (Docket No. 69-7 at 18.)  Ms. Gledhill further indicated that plaintiff's credit scores were in the "excellent" range of over 700.  <u>Id.</u> at 26.  Ms. Gledhill indicated that First Magnus had issued a conditional loan approval, with one condition being that supplemental credit information was provided indicating that the two U.S. Bank accounts were paid.  <u>Id.</u> at 16.  Ms. Gledhill testified that the information necessary to remove the condition would have to come from the CRA, and that First Magnus would not take the consumer's word for it. <u>Id.</u> at 16-18.  Ms. Gledhill testified that the reason this payoff condition was imposed was because "the accounts for U.S. Bank are shown in derogatory status on the credit report."  (Docket No. 69-7 at 16.)  By letter dated May 27, 2005, but faxed to plaintiff on July 18, 2005, Soldi informed plaintiff that his loan had been turned down because "the two U.S. Bank accounts are reporting as being delinquent."  (Docket No. 69-3 at 6.)

In her declaration, Ms. Kimberly Hughes, Experian's Rule 30(b)(6) witness, stated that, on October 2, 2005, U.S. Bank deleted the two disputed accounts from plaintiff's credit file. (Docket No. 67-2 at ¶ 16.)

For his claim of emotional distress, plaintiff submitted his affidavit, in which he testified that, following the mortgage denial, he became depressed and stopped socializing as he had before. (Docket No. 69-3 at 3.) Plaintiff alleges that he had been living in a mobile home in a junk yard while saving money to buy a home, and expressed frustration because he had been unable to secure a mortgage even though he lived within his means, and diligently complied with his child support obligation and all of his other financial obligations. Id. Plaintiff also stated that he suffered stress, reduced appetite, stomach upset, insomnia and irritability. Id. at 4. In support, plaintiff submitted the affidavit of his long-time friend Tom Lombard, who testified that plaintiff changed completely after he was denied the mortgage loan. (Docket No. 69-9 at 1.) Mr. Lombard stated that he and plaintiff had looked at houses together, and that he was with plaintiff during the auction when plaintiff was the high bidder on the house at 416 Adrian. Id. Mr. Lombard stated that, in the days following the auction, plaintiff appeared worried and told him that the lender was not returning his phone calls, and later said that he was unable to get the loan because of his wife's overdue credit cards. Id. Mr. Lombard stated that, despite his repeated efforts, plaintiff became and remained depressed and withdrawn, refused to leave his mobile home to socialize, and appeared like a "broken man" with no motivation to do anything. Id.

## III.  Legal Analysis

### A.  Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  When a motion for summary judgment is properly made and supported, the adverse party may not rest upon the allegations or denials in its pleading, but must instead set forth "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e); Johnson v. Hamilton, 452 F.3d 967, 972 (8th Cir. 2006); Thompson v. Hubbard, 257 F.3d 896, 898-99 (8th Cir. 2001).

Summary judgment is an "extreme remedy", and should be denied unless the movant has "established his right to judgment with such clarity as to leave no room for controversy", and that the other party is "not entitled to recover under any possible circumstances."  New England Mutual Life Insurance Company v. Null, 554 F.2d 896, 901 (8th Cir. 1977).  The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

B.   Plaintiff's FCRA Claims

In his Complaint against Experian, plaintiff alleges that Experian negligently and willfully violated 15 U.S.C. §§ 1681e(b) and 1681i of the FCRA.  Section 1681e(b) requires credit reporting agencies such as Experian to maintain "reasonable" procedures to ensure "maximum possible accuracy" of consumer credit reports. Section 1681i(a)(1)(A) requires a CRA to, upon notice of a dispute from an individual regarding the information in his credit report, conduct a "reasonable reinvestigation" to determine whether the disputed information is inaccurate, and either record the current status of the disputed information, or delete it from the consumer's file.   The FCRA creates a private right of action against credit reporting agencies for willful noncompliance (15 U.S.C. § 1681n) and for negligent noncompliance (15 U.S.C. § 1681o) with the duties imposed therein.

1.   Accuracy

Defendant claims that, because it reported accurate information regarding plaintiff's two U.S. Bank accounts, its procedures were conclusively reasonable to assure maximum possible accuracy of the information.  However, because plaintiff has met his burden of establishing the existence of material disputes of fact, the defense of accuracy is not available to Experian.

Accurate reporting is a complete defense to both a 1681e(b) claim and a 1681i claim.  See Cahlin v. General Motors

- 9 -

<u>Acceptance Corp.</u>, 936 F.2d 1151, 1156, 1160 (11th Cir. 1991). In its motion for summary judgment, Experian presented evidence from Ms. Hughes, as discussed above, that the two accounts were opened as joint accounts, that cards were issued to plaintiff and his wife, and that billing statements addressed to both plaintiff and his wife were mailed to the address where plaintiff admitted he and his wife resided.[4] Experian's evidence shifted the burden to plaintiff to prove that Experian's report was false. Plaintiff met this burden by submitting his affidavit, contesting Experian's evidence. <u>See</u> <u>Beyer v. Firstar Bank N.A.</u>, 447 F.3d 1106, 1108 (8th Cir. 2006) (finding that the plaintiff failed to meet his burden because he did not submit an affidavit or any other evidence from which a reasonable jury could conclude that his complaint was true.) In his affidavit, plaintiff testified that he never opened, signed for, or used any credit account with U.S. Bank, and that he never told a U.S. Bank collector or representative that he was obligated to any extent on any account. (Docket No. 69-3 at 1.) Plaintiff has therefore met his burden of establishing the

_____

[4]Defendant also refers to this Court's September 29, 2006 Order granting the motion of former defendant U.S. Bank to compel arbitration, in which this Court noted with approval U.S. Bank's evidence that, <u>inter alia</u>, the accounts were joint accounts. However, in that Order, this Court offered no opinion on the issue of whether plaintiff was actually responsible for either account. This Court held only that, based upon the evidence U.S. Bank presented, an order compelling arbitration was appropriate. In so holding, this Court noted the Arbitration Act establishes that questions regarding arbitrability should be resolved in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." <u>Moses H. Cone Memorial Hospital v. Mercury Construction Co.</u>, 460 U.S. 1, 24-25 (1983). Presently pending before the Court is a motion for summary judgment which, as explained, requires the application of a much higher legal standard.

existence of a genuine issue for trial as required by Rule 56(e) of the Federal Rules of Civil Procedure.

2. <u>Actual Damages</u>

Defendant next argues that it cannot be held liable under the FCRA because plaintiff has no evidence of actual damages or causation, inasmuch as he cannot prove that he was actually denied credit. Defendant argues that the letter from Soldi is insufficient because: (1) Soldi is merely a mortgage broker and does not fund loans itself; (2) plaintiff has no evidence that he was denied credit by Soldi for any loan funded by First Magnus; (3) the letter from Soldi is not an adverse action letter as such is defined by the FCRA inasmuch as the letter did not set forth the reasons for the denial and the name of the credit reporting agency whose report it relied on; and (3) First Magnus's representative testified that plaintiff's application was withdrawn. In support, defendant cites <u>Tinsley v. TRW Inc.</u>, 879 F.Supp. 550, 552 (D. M.D. 1995) (finding that the plaintiff failed to show damages for a lost opportunity to refinance a home mortgage when he never made an application for one) and <u>Renninger v. ChexSystems</u>, No. 98 C 669, 1998 U.S. Dist LEXIS 8528 at 16 (N.D. Ill May 22, 1998) (rejecting a plaintiff's contention that she was damaged inasmuch as she was deterred from applying for a mortgage). Defendant alternately argues that, even if plaintiff could prove that he was denied credit, he cannot prove that such denial was due to an Experian

credit report.  Defendant's arguments are not well-taken.

        To survive the instant motion for summary judgment, plaintiff has the burden of proving that an Experian credit report was a causal factor in his inability to secure financing.  See Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001); Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996); Casella v. Equifax Credit Information Services, 56 F.3d 469, 473 (2d Cir. 1995); Cahlin, 936 F.2d at 1160-61.  To satisfy this burden, plaintiff has the affirmative duty of presenting evidence supporting his claim that Experian's allegedly inaccurate credit report caused him harm.  Id.  "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'" Crabill, 259 F.3d at 664 (emphasis added).  Consistent with the foregoing, the Tinsley court, noting the plaintiff's inability to establish damages, wrote that the plaintiff had identified "no instance in which he bid on or sought financing for a property and was rejected as a result of information on his credit reports." Tinsley, 879 F.Supp. at 552.

        In the case at bar, however, plaintiff does identify an instance in which he bid on real property at an auction and was unable to secure financing due to information in his Experian credit report.  Plaintiff has presented evidence which would allow a reasonable jury to conclude that he was the high bidder on a home during an auction, and that Soldi sent him a letter advising that

his loan had been "turned down do [sic] to the fact that the two U.S. Bank accounts are reporting as being delinquent" (Docket No. 69-3 at 6). Plaintiff also submits the deposition testimony of Ms. Gledhill of First Magnus, who testified that, in considering plaintiff's loan application, First Magnus considered Experian's report, which showed the two U.S. Bank accounts in delinquent status, and therefore required full payment of the alleged delinquent amount (an amount greater than the loan) before funding plaintiff's loan.

As defendant notes, Ms. Gledhill testified that there were other conditions precedent to the approval of plaintiff's loan. This does not, however, defeat plaintiff's claim inasmuch as there is no precedent supporting the conclusion that plaintiff bears the burden of proving that Experian's report was the sole cause of his inability to secure financing. In fact, as plaintiff argues, other jurisdictions have rejected such a view as "inconsistent with traditional notions of tort law and the reality of human decision-making." Philbin, 101 F.3d at 969. As the Philbin court noted, while a FCRA plaintiff is required to show that the erroneous entry was "a substantial factor in bringing about the denial of credit," he is not required to eliminate the possibility that other factors may have also influenced the credit denial. Id. (citing Pendleton, 76 F.R.D. 192, 195 (D.C. Pa. 1977); Cahlin, 936 F.2d at 1161 (FCRA plaintiff bears burden of proving that the defendant's credit report was "a causal factor" in the

credit denial).  "Forcing a plaintiff affirmatively to rule out other explanations for the credit denial ignores the fact that decisions to deny credit will frequently have more than one cause." Philbin, 101 F.3d at 969.

In the case at bar, plaintiff has met his burden of producing enough evidence to support a reasonable jury verdict in his favor; that is, that there was "causal relation" between the violation of the statute and "the loss of credit, or some other harm". Crabill, 259 F.3d at 664 (emphasis added). The fact that plaintiff's application was withdrawn following First Magnus's imposition of the payoff condition rather than officially denied does not entitle Experian to summary judgment. From plaintiff's evidence, a reasonable jury could conclude that plaintiff was unable to secure financing for the home due to Experian's allegedly erroneous reporting of the two U.S. Bank accounts.

Plaintiff has not, however, met his burden of establishing facts tending to prove that he was denied credit, or that his existing credit rates were increased, regarding Capital One or Chase.  In his First Amended Complaint, plaintiff generally alleged, inter alia, that Experian's credit report caused him to suffer credit denials and interest rate increases.  Also, in his deposition, plaintiff testified that Capital One denied him credit, and that the interest rate on his Chase credit card was increased. In its motion for summary judgment, defendant argues that plaintiff has not demonstrated sufficient facts to allow a jury to find in

his favor regarding Capital One or Chase.  The undersigned agrees.

"A party opposing summary judgment is not permitted to merely rest on his pleadings but must instead set forth sufficient evidence from which a reasonable jury could find in his favor on all elements of his claims."  Johnson, 452 F.3d at 972 (citing Thompson, 257 F.3d at 898-99).  In the pleadings plaintiff filed in response to Experian's motion for summary judgment, he addresses only the aforementioned mortgage denial, and offers no evidence which would allow a jury to find in his favor on the issue of whether Experian's report caused him to be denied a Capital One credit account, or caused Chase to increase his interest rate. Experian is therefore entitled to summary judgment in its favor on the issue of whether an Experian credit report caused plaintiff to suffer a denial of credit from Capital One, or caused Chase to increase his interest rate.


3.  Emotional Distress

Plaintiff also alleges that he suffered emotional distress as a result of Experian's reporting of allegedly erroneous information.  Plaintiff alleges that he suffered depression and irritability, became uncharacteristically withdrawn, and suffered physical ailments.  Experian argues that plaintiff cannot prove that its credit report was the proximate cause of plaintiff's emotional injuries.  The undersigned disagrees.

Emotional injuries are recognized under the Act.

Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829, 834-35 (8th Cir. 1976). However, a plaintiff cannot recover for pain and suffering if he cannot show that the CRA disseminated the allegedly inaccurate information, or that it was viewed by a third party. Casella, 56 F.3d at 475. In addition, absent evidence of a "genuine injury", a plaintiff cannot recover an award of damages for emotional distress. Carey v. Piphus, 435 U.S. 247, 264 n.20 (1978) (a jury's award for emotional distress must be supported by evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others). Acceptable evidence of a genuine injury includes witness corroboration of any outward manifestation of emotional distress. Forshee v. Waterloo Industries, 178 F.3d 527, 531 (8th Cir. 1999).

In the case at bar, plaintiff has provided evidence, in the form of Ms. Gledhill's deposition, that his allegedly inaccurate Experian report was viewed by First Magnus in conjunction with his mortgage application. Plaintiff has also provided his own affidavit in which he testified that he suffered the emotional and physical symptoms alleged in his First Amended Complaint. Plaintiff has also provided Mr. Lombard's affidavit, in which he corroborates plaintiff's allegations and offers his own view of plaintiff's outward manifestations of emotional injury following his inability to secure financing for the house. Plaintiff has therefore met his burden of presenting evidence from which a reasonable jury could conclude that he indeed suffered a

- 16 -

genuine emotional injury, and that Experian's allegedly erroneous credit report was the proximate cause.  Experian is not entitled to summary judgment on plaintiff's claim of emotional distress.


C.    Negligent Violation of the FCRA

        In Count I, plaintiff alleges that defendant negligently violated § 1681e(b) inasmuch as it failed to use reasonable procedures to ensure the accuracy of the information in his credit report.  In its motion for summary judgment, defendant argues that it uses rigorous quality control and statutory compliance procedures, and that plaintiff cannot show that it failed to follow reasonable procedures.  Defendant is not entitled to summary judgment on the issue of whether it negligently violated § 1681e(b).

        As noted above, the FCRA requires credit reporting agencies such as Experian to maintain reasonable procedures calculated to ensure "maximum possible accuracy" of consumer credit reports.  15 U.S.C. § 1681e(b).  To establish a prima facie case of negligent § 1681e(b) violation, an FCRA plaintiff is required to present some evidence from which the trier of fact can infer that the CRA failed to follow reasonable procedures to ensure maximum possible accuracy of the information in a person's credit report. Gohman v. Equifax Information Services, LLC, 395 F.Supp.2d 822, 826 (8th Cir. 2005)(citing Stewart v. Credit Bureau, Inc., 734 F.2d 47, 51 (D.C. Cir. 1984)).  Plaintiff herein has met this burden.  The

undisputed evidence in this case establishes that U.S. Bank had plaintiff's name and former address, but did not have plaintiff's social security number, signature, or other identifying evidence tending to show that he was indeed responsible for the two accounts. Based upon this evidence, a reasonable jury could conclude that Experian's reporting procedures were unreasonable, inasmuch as it failed to require sufficient identifying information about a consumer before listing accounts on his or her credit report.

The undersigned further notes that when, as here, the facts are in dispute, the question of whether a CRA followed reasonable procedures is a question for the jury. <u>Cahlin</u>, 936 F.2d at 1156. Experian has failed to meet the demanding standard of proving its entitlement to judgment as a matter of law on the issue of whether it negligently violated 15 U.S.C. § 1681e(b).

### 1.   Plaintiff's § 1681i Claim

In Count I of his First Amended Complaint, plaintiff alleges that defendant negligently violated § 1681i inasmuch as it failed to conduct a reasonable reinvestigation of his consumer dispute. Defendant argues that its reinvestigation of plaintiff's dispute was reasonable inasmuch as it submitted CDV forms to U.S. Bank. Experian is not entitled to summary judgment on plaintiff's claim that it negligently violated § 1681i of the FCRA.

As noted above, § 1681i of the FCRA requires a CRA to,

upon notice of a dispute from an individual regarding the information in his credit report, conduct a "reasonable reinvestigation" to determine whether the disputed information is inaccurate, and either record the current status of the disputed information, or delete it from the consumer's file. In conducting an inquiry into whether the CRA conducted a reasonable reinvestigation, relevant factors are whether the consumer alerted the agency that the information may be unreliable, and the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information. Bruce v. First U.S.A. Bank, 103 F.Supp.2d 1135, 1143 (E.D. Mo. 2000). "The determination of the 'reasonableness' of the defendant's procedures . . . is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonable or unreasonableness of the procedures is beyond question". Crabill, 259 F.3d at 664.

        As discussed, supra, the undisputed evidence in this case establishes that plaintiff initiated a consumer dispute with Experian; that Experian sent CDV forms to U.S. Bank; and that U.S. Bank returned the forms indicating that plaintiff's name matched their records, but that U.S. Bank was "unable to verify" plaintiff's social security number and date of birth. A telephone number was also provided. Experian did not, via phone or other means of communication, require any further information from U.S. Bank that the accounts indeed belonged to plaintiff before

considering the accounts verified. A jury considering this evidence could conclude that Experian negligently failed to take reasonable steps to verify the accuracy of the information it reported to third parties. As noted above, when as here the facts are disputed, "reasonableness" is a jury question. <u>Crabill</u>, 259 F.3d at 664.


     D.   <u>Willful Violations of the FCRA</u>

     In Count II of his First Amended Complaint, plaintiff alleges that Experian willfully violated §§ 1681e(b) and 1681i. Experian argues entitlement to summary judgment inasmuch as plaintiff cannot prove that it knowingly and intentionally acted in conscious disregard for the rights of others. Experian further submits that the willfulness requirement of § 1681n is synonymous with the requirement of intent in criminal statutes. The undersigned disagrees.

     "To show willful noncompliance with the FCRA, [the plaintiff] must show that [the defendant] 'knowingly and intentionally committed an act in conscious disregard for the rights of others,' but need not show 'malice or evil motive.'" <u>Bakker v. McKinnon</u>, 152 F.3d 1007, 1013 (8th Cir. 1998) (citing <u>Cushman v. Trans Union Corp.</u>, 115 F.3d 220, 226 (3d Cir. 1997); <u>Philbin</u>, 101 F.3d at 970; <u>Pinner v. Schmidt</u>, 805 F.2d 1258, 1263 (5th Cir. 1986)). Furthermore, the U.S. Supreme Court recently rejected the argument that "willfulness" under § 1681n can be found

only if the actor knew his actions violated the statute, noting instead that it was sufficient if the harmful actions amounted to reckless disregard of statutory duty. Safeco Ins. Co. of America v. Burr, 127 S.Ct. 2201, 2208 (2007). The Safeco Court also rejected the idea that willfulness in the civil context was synonymous with the requirement of intent in criminal cases. Id. at n. 9. "Where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." Id. at 2208 (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132-133 (1988) ("willful," as used in a limitation provision for actions under the Fair Labor Standards Act, covers claims of reckless violation); United States v. Illinois Central R. Co., 303 U.S. 239, 242-243 (1938) ("willfully," as used in a civil penalty provision, includes "'conduct marked by careless disregard whether or not one has the right so to act'" (quoting United States v. Murdock, 290 U.S. 389, 395 (1933)); see also Millstone, 528 F.2d 829 (the Eighth Circuit concluded that the defendant had willfully violated both the spirit and the letter of the FCRA, upheld the recovery of damages for "mere mental pain and anxiety," and also held that the trial court was acting within its discretion when it awarded punitive damages, where evidence showed the CRA agent devoted only 30 minutes to preparation of the plaintiff's report, which was inaccurate.)

In the case at bar, as discussed above with regard to

plaintiff's claims for negligent violation of the FCRA, the undersigned is unable to say that, as a matter of law, no reasonable jury could find that Experian willfully failed to use reasonable procedures to ensure the accuracy of the credit information it disseminated to third parties, or that it willfully failed to reasonably reinvestigate plaintiff's dispute, as required by 15 U.S.C. §§ 1681e(b) and 1681i, respectively.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Experian is entitled to summary judgment in its favor on the issue of whether its credit report caused Capital One to deny plaintiff credit and Chase to increase his interest rate.

**IT IS FURTHER ORDERED** that Experian's motion for summary judgment (Docket No. 66) is **DENIED** on all other claims.


_Frederick R. Buckles_
FREDERICK R. BUCKLES
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of July, 2008.